IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

SHONDA R. WHITE, INDIVIDUALY AND AS
MOTHER AND NEXT FRIEND OF
LASUNDRA JOSEPHINE WHITE, A MINOR
and JASMINE KINDS, DECEASED MINOR,

      Plaintiffs,

vs.                        NO:  2:25-cv-02800

CITY OF MEMPHIS, TENNESSEE,
MEMPHIS POLICE DEPARTMENT,
ONTARIAN MALONE,
MARQUAVIUS WILLIAMS,
MARTERRION BRISCO, and
XAVIER HUNT,

      Defendants.

_____

**PLAINTIFFS SHONDA R. WHITE, INDIVIDUALY AND AS MOTHER AND NEXT
FRIEND OF LASUNDRA JOSEPHINE WHITE, A MINOR and JASMINE KINDS,
DECEASED MINOR'S SECOND AMENDED COMPLAINT PURSUANT TO
RULE 15(a)(1)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE**
_____

      Come now the Plaintiffs Shonda R. White, individually and as mother and next

friend of Lasundra Josephine White, a minor, and Jasmine Kinds, deceased minor, by

and through their undersigned Counsel, and filing their Second Amended Complaint

herein and in support thereof, would show this Honorable Court the following to-wit:

### I. INTRODUCTION

1.  This is an action brought against Defendants, City of Memphis, Tennessee

(hereinafter referred "Defendant City"), Memphis Police Department, (hereinafter referred Defendant MPD), Ontarian Malone and Marquavius Williams (hereinafter collectively referred to as "Defendant Officers Malone and Williams"), for federal constitutional violations and state law personal and tortious injuries suffered by Plaintiffs because of their intentional, callous, unreasonable and unlawful pursuit while Defendants acted under color of state law. Plaintiffs bring this action for compensatory damages under 42 U.S.C. §1983, because Defendants jointly and/or severally deprived Plaintiffs their federally protected civil liberties and privileges to be free from unreasonable excessive force, and to be free from arrest without just cause pursuant to the Fourth and Fourteenth Amendments to the United States Constitution as well as derivative claims and damages.

2.   As a direct consequence of the policies, practices, and procedures of the City of Memphis, Tennessee (hereinafter "Defendant City"), and Memphis Police Department (Defendant MPD), Plaintiffs were intentionally deprived of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Officers, Malone and Williams, and by ratification and condoning, Defendant Officers Malone and Williams, acting within the course and scope of their employment with the Defendant MPD, and acting under color of state law, unjustifiably used excessive and unreasonable force in pursuing the vehicle in which Plaintiffs were passengers, without probable cause and under circumstances where no reasonable law enforcement would have done so. Under well-established law concerning the above violations, Defendant Officers Malone and

2

Williams are not entitled to qualified or other immunity for these actions.

3.   Venue is proper because Defendant City is deemed to be chartered and incorporated in any judicial district in which it is subject to the Court's personal jurisdiction with respect to the civil action in question; Defendant Officers Malone and Williams, are employees of Defendant City and Defendant MPD and acted in their official capacity or under color of legal authority, and all events, actions, and injuries giving rise to this claim occurred within the Western District of Tennessee.

4.   All applicable limitations on actions have been extended pursuant to the "Discovery Rule" in light of new evidence produced during the discovery phase of litigation.

## I.   PARTIES

5.   Plaintiffs reallege, re-assert, and re-aver paragraphs 1 through 4 of this Second Amended Complaint and incorporate them herein by reference.

6.   Plaintiff, SHONDA R. WHITE, is an adult resident of Memphis, Shelby County, Tennessee, and the mother and next friend of LASUNDRA JOSEPHINE WHITE, a minor (DOB: 10/23/2008) and JASMINE KINDS, deceased minor (DOB: 2/16/2006).

7.   That Defendant MPD, upon information and belief, is the municipal police department for the City of Memphis, which has waived its sovereign immunity pursuant to TCA § 29-20-202, and which can be served through its Chief, Cerelyn

3

"C.J" Davis, with a current address at 170 North Main Street, Memphis, Tennessee 38103.

8.   That Defendant City, upon information and belief, is an incorporated municipality located in Shelby County, Tennessee and which may be served through its duly elected mayor, Paul Young, 125 N. Main Street, Memphis, Tennessee and/or Tannera Gibson, the City's Chief Legal Officer, with offices at 125 N. Main Street, Room 336, Memphis, Tennessee.

9.   That Defendant Officer Ontarian Malone, upon information and belief, is an adult resident of Memphis, Shelby County, Tennessee, with a current address at 4928 Woodberry Cove, Memphis, Tennessee 38114.

10.   That Defendant Officer Marquavius Williams, upon information and belief, is an adult of Memphis, Shelby County, Tennessee, with a current address at 6375 Arbor Creek Trail, #102, Memphis, Tennessee 38115.

11.   That Defendant, Marterrion Brisco, upon information and belief, is an adult resident of Memphis, Shelby County, Tennessee, with a current address at 3196 Southbridge Street, Memphis, Tennessee 38118.

12.   That Defendant, Xavier Hunt, upon information and belief, is an adult resident of Memphis, Shelby County, Tennessee, with a current address at 4455 Laird Drive, Memphis, Tennessee 38141.

13.   Defendant MPD is a municipality, duly incorporated under the laws of the State of Tennessee and, as such, is a political subdivision of the State of Tennessee.  Amongst its many functions, the Defendant City operates and maintains

4

a law enforcement agency known as the Memphis Police Department (hereinafter Defendant MPD"). The Defendant City is under a duty to operate its police activities in a lawful manner to preserve the peace and dignity of the Defendant City and the rights, privileges, and immunities guaranteed and secured to its residents and visitors pursuant to the Constitution and the laws of the United States of America and State of Tennessee.

14.  All law enforcement officers were employed in the City of Memphis, Shelby County, Tennessee at all times relevant to the events in question. The acts and omissions complained of herein arise from the conduct of Defendant Officers Malone and Williams, while they were acting under color of state law, and each act and omission was committed pursuant to Defendant Officers Malone and Williams' employment and authority as police officers with Defendant City. Defendant Officers Malone and Williams are sued in their official and individual capacities.

15. This cause of action arises from a vehicular accident on or about May 6, 2023, in Memphis, Shelby County, Tennessee, resulting from a high-speed chase engaged in by the Defendant Officers, Malone and Williams, while employed with and acting within the course and scope of their employment of Defendant City and Defendant MPD, of a vehicle operated by Defendant Marterrion Brisco, in which minor Plaintiff, LASUNDRA JOSEPHINE WHITE, was severely injured and minor Plaintiff, JASMINE KINDS, was wrongfully killed as a result of her severe injuries.

16.  Pursuant to the above and in accordance with TCA § 29-20-307, jurisdiction, venue, and service of process is therefore proper with this Honorable Court.

### III.  FACTS

17.  Plaintiffs reallege, re-assert, and re-aver paragraphs 1 through 16 of this Second Amended Complaint and incorporate them herein by reference, as if copying *in extenso*.

18.  On or about May 6, 2023, at approximately 2:53 A.M., minor Plaintiffs, LASUNDRA JOSEPHINE WHITE, and JASMINE KINDS, were guest passengers in a 2013 Infiniti G37 automobile bearing Tennessee License No. BJW9457, owned by Defendant Xavier Hunt, and being operated with his permission by Defendant Marterrion Brisco, traveling eastbound on Park Avenue in Memphis, Shelby Couty, Tennessee.

19.  At the same time, on or about May 6, 2023, Defendant Officers Malone and Williams, employed by Defendant City and Defendant MPD, and operating a marked police unit owned by the Defendant City Defendant MPD, engaged in a high-speed pursuit of the 2013 Infiniti G37 operated by Defendant, Marterrion Brisco.

20.  On or about May 6, 2023, at approximately 2:53 A.M., the sworn police officers employed by Defendant City and Defendant MPD, Defendant Officers Malone and Williams, in their high-speed pursuit of the vehicle operated by Defendant, Marterrion Brisco, intentionally struck the rear of the 2013 Infiniti G37 vehicle operated by Defendant, Marterrion Brisco, which caused Defendant, Marterrion Bisco, to swerve to avoid a vehicle, lose control of the 2013 Infiniti G37, failed to maintain control, crossed the center line striking a vehicle traveling

westbound on Park Avenue. That Defendant, Marterrion Brisco then exited the roadway to the north striking a chain link fence, a metal awning, and a brick building, which resulted in Defendant's vehicle catching on fire and exploding, burning the building and coming to rest against the same brick building facing east.

21.   At all times herein, Defendant Officers Malone and Williams, two sworn police officers of Defendant City and Defendant MPD, began and engaged in this high-speed chase while operating the marked police  unit owned by Defendant City and Defendant MPD, without the headlights or any other safety lights, without the emergency roof mounted lights, and without the use of the installed dash cam and other identifying equipment.

22.   At all times herein, Defendant Officers Malone and Williams the sworn police officers of the Defendant City and Defendant MPD, referenced above, were working in the course and scope of their employment with Defendant City and Defendant MPD.

23.   That after the impact, Defendant, Marterrion Brisco, fled the scene of the accident.

24. Plaintiffs respectfully show that prior to the events described above, Defendant Officers Malone and Williams had engaged in similar pursuits which were known to Defendant City and Defendant MPD, which pursuits are specifically based on the following:

> a.   On May 16, 2023, Defendant Officer Williams admitted that he had
>       engaged in "black out" pursuits (pursuits at night where headlights

and emergency lights are not illuminated) on a few occasions, prior to the events of May 6, 2023.

b. Defendant Officer Williams was known to have knowingly violated stated policies and regulations of Defendant MPD regarding the personal use of police unit while off duty.

c. Defendant Officer Williams was cited on two previous occasions for failure to maintain proper control of his marked police unit, once while in emergency mode, and once while not in emergency mode. On each occasion, Defendant Officer Malone claimed that the vehicle had faulty brakes.

d. In two separate incidents, both occurring on December 20, 2022, Defendant Officer Williams, was cited for violations of Memphis Police Department's DR 101 Compliance with Regulations to wit:  Police Vehicle Operation/Pursuit Policy.

e. The first pursuit occurring on December 20, 2022, Officer Williams traveled at speeds between 76 and 132 m.p.h. on roadways with posted speeds between 35 to 65 m.p.h.  He drove the police vehicle through a store parking lot and against traffic in oncoming lanes lanes. He drove on the shoulder of the interstate and exceeded the speeds of normal traffic flow without activating the emergency blue lights or siren and caused other vehicles to react evasively demonstrating reckless regard for the safety of others.

8

f.  The second pursuit also occurring on December 20, 2022, Officer Williams passed another Police Officer's vehicle on the shoulder of the road traveling at 110 m.p.h. during the pursuit

g.  These acts were known or should have been known to Defendant MPD prior to the events of May 6, 2023.

h.  On February 9, 2023, Defendant Officer Malone engaged in high-speed pursuit of a suspicious vehicle, without activating emergency lights and sirens and without notification to his supervisor at Defendant MPD.

i.  On December 20, 2022, Defendant Officer Malone engaged in a high speed pursuit of a vehicle that did not involve a "violent fleeing felon" without activating emergency lights and sirens, and driving in excess of 100 miles per hour over streets with speed limits ranging between 35 miles per hour and 65 miles per hour.

j.  Both these incidents were known to Defendant MPD prior to the events of May 6, 2023.

25.  Plaintiffs respectfully show Defendant MPD's vehicles were equipped with In Car Video (ICV) and officers are required to wear Body Worn Cameras (BWC), which were to record all law enforcement activities.

26.  Because of the technology equipped set forth above, Defendant MPD knew or in the exercise of reasonable care should have known that Defendant Officer Malone engaged in "black out" pursuits, and failed to take any corrective measures whatsoever.

9

27.  As a direct and proximate result of the accident described above, Plaintiffs sustained serious injuries, including harms of both an economic and non-economic type.

## IV.  VICARIOUS LIABILITY

28.   Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 27 of this Second Amended Complaint, and reference the same herein as if copying *in extenso.*

29.   Plaintiffs charge and allege that the Defendant City was the registered owner of the vehicle that was negligently and recklessly operated by the two sworn police officers, Defendant Officers Malone and Williams, of Defendant City and Defendant MPD on or about May 6, 2023, and that Defendants City and MPD are vicariously liable for the negligent acts and/or omissions of the two sworn police officers of the Defendant City and Defendant MPD, pursuant to the doctrines of negligent entrustment, permissive user, master/servant, agency, and/or family purpose.  Plaintiffs further rely upon §55-10-311 and § 55-10-312 of the Tennessee Code Annotated, so that every act of negligence as alleged herein against the two sworn police officers, Defendant Malone and Williams, is imputed to Defendant City and Defendant MPD, who are  liable to Plaintiffs for the resulting injuries to minor Plaintiff, LADUNDRA JOEPHINE WHITE, and the fatal death of minor Plaintiff, JASMINE KINDS.

30.  Plaintiffs charge and allege that the Defendant, Xavier Hunt, was the registered

owner of the vehicle that was negligently and recklessly operated by Defendant,

Marterrion Brisco, on or about May 6, 2023, and that Defendant, Xavier Hunt, is

vicariously liable for the negligent acts and/or omissions of the Defendant, Marterrion

Brisco, pursuant to the doctrines of negligent entrustment, permissive user,

master/servant, agency, and/or family purpose.  Plaintiffs further rely upon § 55-10-311

and § 55-10-312 of the Tennessee Cde Annotated, so that every act of negligence as

alleged herein against Defendant, Marterrion Brisco, who is liable to Plaintiffs for the

resulting injuries to minor Plaintiff, LASUNDRA JOSEPHINE WHITE, and the fatal death

of minor Plaintiff, JASMINE KINDS.

### V.  ACTS AND/OR OMISSIONS OF NEGLIGENCE

31.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 30 of this

Second Amended Complaint, and reference the same herein as if copying

*in extenso.*


32.  Plaintiffs charge and allege that the two sworn police officers of the

Defendant City and Defendant MPD, Defendant Officers Malone and Williams, were

guilty of one, some, or all of the following acts and/or omissions of common law

negligence, to wit:

(a)    Negligently disregarding their duty to operate their marked unit with due regard for the safety of others;

(b)    In operating their vehicle in reckless disregard for the safety of others;

(c)    Negligently failing to maintain a proper lookout ahead;

11

(d)    Negligently failing to maintain proper control of their vehicle under
        the existing circumstances;

(e)    Negligently failing to operate their vehicle at a safe speed for the
        circumstances then and there existing;

(f)    Negligently failing to adequately monitor the flow of traffic;

(g)    In engaging in a high-speed pursuit of the vehicle operated by
        Defendant, Marterrion Brisco;

(h)    In negligently operating their vehicle knowing there was a high
        degree of risk of injury to innocent third parties, particularly the
        minor Plaintiff passengers in the vehicle operated by Defendant,
        Marterrion Brisco;

(i)    In operating their vehicle in pursuit of Defendant, Marterrion Brisco,
        in an inner-city street, creating a high degree of risk of an accident
        resulting;

(j)    In operating their vehicle in pursuit of Defendant, Marterrion Brisco,
        in the presence of other traffic which created a high degree of risk
        of an accident resulting

(k)    In pursuing the fleeing suspect Defendant, Marterrion Brisco, at a
        very high rate of speed, exceeding the posted speed limit, with no
        vehicle lights on, no visual or audible emergency signal, or a
        combination of emergency devices during a time of darkness,
        intentionally creating a high risk of injury to others;

(l)    In intentionally striking the rear of the 2013 Infiniti G37 vehicle
        operated by Defendant, Marterrion Brisco;

(m)    Defendants' conduct shocked the conscious of society.

(n)    In failing to stop, furnish information, and render aid to minor
        Plaintiffs who were seriously injured;

(o)    In fleeing the scene of the accident;

(p)    In failing to report said accident to the police.

12

33.  Plaintiffs charge and allege that Defendant, Marterrion Brisco, was guilty of

one, some, or all of the following acts and/or omissions of common law negligence, to

wit:

(a)    Negligently failing to maintain a proper lookout ahead;

(b)    Negligently failing to maintain proper control of the vehicle under
       the existing circumstances;

(c)    Negligently failing to devote full time and attention to the operation
       of his vehicle;

(d)    Negligently failing to use the degree of care and caution in the
       operation of his vehicle as was required of a reasonable and
       prudent person under the same or similar circumstances existing at
       the time and place of the aforementioned collision;

(e)    Negligently failing to operate his vehicle at a safe speed for the
       circumstances then and there existing;

(f)    Negligently failing to adequately and reasonably monitor the flow of
       traffic;

(g)    Negligently failing to bring his vehicle under control by applying his
       brakes in time to avoid an accident;

(h)    Negligently failing to use reasonable care to avoid injury to himself
       and/or others while operating a vehicle;

(i)    Negligently failing to slow, stop, steer, or otherwise maneuver his
       vehicle to avoid the accident

(j)    In operating his vehicle at an excessive rate of speed;

(k)    In driving his vehicle in a wanton, reckless, and malicious manner
       without due regard for the safety of persons or property, in violation
       of his common law duties.

(l)    In failing to stop, furnish information, and render aid to minor
       Plaintiffs who were seriously injured;

(m)    In fleeing the scene of the accident;

(n)    In failing to report said accident to the police.

(o)    Defendant's conduct shocked the conscious of society.

34.  Plaintiffs charge and allege that at the time of the collision in question, the following Statutes of the State of Tennessee were in full force and effect and were violated by the Defendants Officers Malone and Williams, employees of the Defendant City and Defendant MPD constituting negligence per se, to wit:

**Section 39-13-213 – Vehicular homicide, et seq.**
(a) Vehicular homicide is the reckless killing of another by the operation of an automobile, airplane, motorboat or other motor vehicle, as the proximate result of: (1) Conduct creating a substantial risk of death or serious bodily injury to a person; (2) The driver's intoxication, as set forth in § 55-10-401. For the purposes of this section, "intoxication" includes alcohol intoxication as defined by § 55-10-411(a), drug intoxication, or both; (3) As the proximate result of conduct constituting the offense of drag racing as prohibited by title 55, chapter 10, part 5; or (4) The driver's conduct in a posted construction zone where the person killed was an employee of the department of transportation or a highway construction worker.

(b) (1) Vehicular homicide under subdivision (a)(1) or (a)(3) is a Class C felony.

(2)(A) Vehicular homicide under subdivision (a)(2) is a Class B felony. (B) Any sentence imposed for a first violation of subdivision (a)(2) shall include a mandatory minimum sentence of forty-eight (48) consecutive hours of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire forty-eight-hour minimum mandatory sentence.

(C)If at the time of sentencing for a violation of subdivision (a)(2), the person has one (1) prior conviction for an alcohol-related offense, any sentence imposed by the judge shall include a mandatory minimum sentence of forty-five (45) consecutive days of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire forty-five-day minimum mandatory sentence.

(D) If at the time of sentencing for a violation of subdivision (a)(2), the person has any combination of two (2) prior convictions for an alcohol-related offense, any sentence imposed by the judge shall include a mandatory minimum sentence of one hundred twenty (120) consecutive days of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire one hundred twenty-day mandatory minimum sentence.

(E) If at the time of sentencing for a violation of subdivision (a)(2), the person has any combination of three (3) or more prior convictions for an alcohol-related offense, any sentence imposed by the judge shall include a mandatory minimum sentence of one hundred fifty (150) consecutive days of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire one hundred fifty-day mandatory minimum sentence.

(F) As used in this subdivision (b)(2), "alcohol-related offense" means a conviction for a violation of subdivision (a)(2), § 55-10-401, § 39-13-106, or § 39-13-218.

(G) For purposes of sentencing under this subdivision (b)(2), a prior conviction for an alcohol-related offense may be used to enhance the mandatory minimum sentence regardless of whether it occurred before or after July 1, 2015, as long as the violation of this section occurs on or after July 1, 2015.

(3) Vehicular homicide under subdivision (a)(4) is a Class D felony.

(c) The court shall prohibit a defendant convicted of vehicular homicide from driving a vehicle in this state for a period of time not less than three (3) years nor more than ten (10) years.

**Section 39-16-402 – Official misconduct, et seq**
(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:(1) Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power; (2) Commits an act under color of office or employment that exceeds the public servant's official power; (3) Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment; (4) Violates a law relating to the public servant's office or

15

employment; or (5) Receives any benefit not otherwise authorized by law.

(b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity or takes advantage of the actual or purported capacity.

(c) (1) For purposes of subdivision (a)(5), the ways in which a public servant receives a benefit not otherwise authorized by law include, but are not limited to, a public servant who: (A) Purchases real property or otherwise obtains an option to purchase real property with intent to make a profit if the public servant knows that such real property may be purchased by a governmental entity and such information is not public knowledge; or (B) Acquires nonpublic information derived from such person's position as a public servant or gained from the performance of such person's official duties as a public servant and knowingly acts on such nonpublic information to acquire, or obtain an option to acquire, or liquidate, tangible or intangible personal property with intent to make a profit. (2) Ouster provisions shall be instituted upon a conviction under subsection (a) in which the conduct described in subsection (c) is the basis of the violation. In addition any person convicted of such offense shall forever afterward be disqualified from holding any office under the laws or constitution of this state.

(d) It is a defense to prosecution for this offense that the benefit involved was a trivial benefit incidental to personal, professional or business contact, and involved no substantial risk of undermining official impartiality.

(e) (1) An offense under subsection (a) in which the conduct described in subsection (c) is not the basis of the violation is a Class E felony.(2) An offense under subsection (a) in which the conduct described in subsection (c) is the basis of the violation is a Class A misdemeanor and the court shall order appropriate restitution to the governmental entity harmed by the offense. (3) If the defendant's conduct violates this section and other criminal statutes, nothing in this subsection (e) shall be construed as prohibiting prosecution and conviction for theft or any other such applicable offense in addition to or in lieu of prosecution and conviction for a violation of this section.

(f) Charges for official misconduct may be brought only by indictment, presentment or criminal information; provided, that nothing in this section shall deny a person from pursuing other criminal charges by affidavit of complaint.

## Section 55-8-103   Required obedience to traffic laws -

(a) It is unlawful and unless otherwise declared in this chapter and chapter 10, parts 1 - 5 of this title with respect to particular offenses, it is a Class C misdemeanor, for any person to do any

16

act forbidden or fail to perform any act required in this chapter and chapter 10 of this title.

### Section 55-8-136    Drivers to exercise due care -

(b)   Notwithstanding any speed limit or zone in effect at the time, or right of way rules that may be applicable, every driver of a motor vehicle shall exercise due care to avoid collision with any other motor vehicle, either being driven or legally parked, upon any roadway, or any road sign, guard rail or any fixed object legally placed within or beside the roadway right of way, by operating such motor vehicle at a safe speed, by maintaining a safe lookout, by keeping such motor vehicle under proper control and by devoting full time and attention to operating such motor vehicle, under the existing circumstances to avoid endanger life, limb or property.

(c)   A violation of this section is a Class C misdemeanor.

### Section 55-10-101   Accidents involving death or personal injury -

(a)  The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close to the scene as possible, but shall then return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of §55-10-103.

(b) (1) A violation of subsection (a) is a Class A misdemeanor.

(2) (A) It is a Class E felony for any person to fail to stop or to comply with the requirements of subsection (a) when the person knew or should reasonably have known that death resulted from the accident.(B) If, as a result of the same course of conduct, a person who is charged with a violation of subdivision (b)(2)(A) is also charged with the offense of vehicular assault under §39-13-106, vehicular homicide under §39-13-218, any sentence imposed for a violation of subdivision (b)(2)(A) shall be served consecutive to any sentence imposed for the applicable assault or homicide offense.

(c)  The commissioner shall evoke the license or permit to drive and any nonresident operating privilege of the person convicted of a violation of this section.

(d)  As used in this part, "accident" includes any collision or crash, regardless of the degree of care exercised by the drivers involved or whether it was the result of criminal conduct.

### Section 55-10-103 Duty to give information and render aid. -

(a)      The driver of any vehicle involved in an accident, resulting in injury to or death of any person or damage to any vehicle that is

driven or attended by any person shall give the driver's name, address and the registration number of the vehicle the driver is driving, and shall, upon request and if available, exhibit that driver's operator's or chauffeur's license, or driver license, to the person struck or the driver or occupant of or person attending any vehicle collided with, and shall render to any person injured in the accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if carrying is requested by the injured person.

**Section 55-10-106   Immediate notice of accident.**

(a)     The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of fifty dollars ($50.00) or more shall immediately, by the quickest means of communication, give notice of the accident to the local police department if the accident occurs within a *municipality, otherwise to the office of the county sheriff or the* nearest office of the state highway patrol.

**Section 55-8-108 et seq.  Authorized emergency vehicles.**

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in this section.

(b) (1)  A driver of an authorized emergency vehicle operating the vehicle in accordance with this subsection (a) may:

(A)  Park or stand, notwithstanding, other provisions of this chapter that regulate parking or standing;

(B) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(C) Exceed the seed limits so long as life or property is not thereby endangered; and

(D) Disregard regulations governing direction of movement or turning in specified directions.

(2)  Subdivision (b)(1) shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall subdivision (b)(1) protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

(c) (1) The exemptions granted under subsection (b) to a driver of an authorized emergency vehicle shall only apply when the vehicle is

18

making use of audible and visual signals meeting the requirements
of the applicable laws of this state, except that while parked or
standing an authorized emergency vehicle shall only be required to
make use of visual signals meeting the requirements of the
applicable laws of this state.

  (2)  Nothing in this section shall be construed to prohibit the driver
of an authorized emergency vehicle while parked or standing, from
making use of both audible and visual signals meeting the
requirements of the applicable laws of this state, in the discretion of
the driver.

(d)  An authorized emergency vehicle operated as a police vehicle may
be equipped with or display a red light only in combination with a
blue light visible from in front of the vehicle.

(e)  Notwithstanding the requirement of this section that drivers of
authorized emergency vehicles exercise due regard for the safety
of all persons, no municipality or county nor the state or any of its
political subdivisions, nor their officers or employees, shall be liable
for any injury proximately or indirectly caused to an actual
suspected violator of a law or ordinance who is fleeing pursuit by
law enforcement personnel.  The fact that law enforcement
personnel pursue an actual or suspected violator of a law or
ordinance who flees from pursuit shall not render the law
enforcement personnel, or the employers of the law enforcement
personnel, liable for injuries to a third party proximately caused by
the fleeing party unless the conduct of the law enforcement
personnel was negligent and that negligence was a proximate
cause of the injuries to the third party.

**Section 55-10-205  Reckless driving.**
    (a) Any person who drives any vehicle in willful or wanton disregard for the
safety of persons or property commits reckless driving.

35.  Plaintiffs charge and allege that at the time of the collision in question, the

following Statutes of the State of Tennessee were in full force and effect and were

violated by Defendant, Marterrion Brisco, constituting negligence per se, to wit:

**Section 55-8-103   Required obedience to traffic laws -**
        It is unlawful and unless otherwise declared in this chapter and
chapter 10, parts 1 - 5 of this title with respect to particular

19

offenses, it is a Class C misdemeanor, for any person to do any act
forbidden or fail to perform any act required in this chapter and
chapter 10 of this title.

(b)   Notwithstanding any speed limit or zone in effect at the
time, or right-of-way rules that may be applicable, every driver of a
motor vehicle shall exercise due care to avoid collision with any
other motor vehicle, either being driven or legally parked, upon any
roadway, or any road sign, guard rail or any fixed object legally
placed within or beside the roadway right of way, by operating such
motor vehicle at a safe speed, by maintaining a safe lookout, by
keeping such motor vehicle under proper control and by devoting
full time and attention to operating such motor vehicle, under the
existing circumstances to avoid endangering life, limb or property.
(b) A violation of this section is a Class C misdemeanor.

**Section 55-8-136    Drivers to exercise due care -**

(b)   Notwithstanding any speed limit or zone in effect at the
time, or right-of-way rules that may be applicable, every driver of a
motor vehicle shall exercise due care to avoid collision with any
other motor vehicle, either being driven or legally parked, upon any
roadway, or any road sign, guard rail or any fixed object legally
placed within or beside the roadway right of way, by operating such
motor vehicle at a safe speed, by maintaining a safe lookout, by
keeping such motor vehicle under proper control and by devoting
full time and attention to operating such motor vehicle, under the
existing circumstances to avoid endangering life, limb or property.

(c)   A violation of this section is a Class C misdemeanor.

**Section 55-10-101    Accidents involving death or personal injury -**

(a)  The driver of any vehicle involved in an accident resulting in
injury to or death of any person shall immediately stop the vehicle
at the scene of the accident or as close to the scene as possible,
but shall then return to and in every event shall remain at the scene
of the accident until the driver has fulfilled the requirements of §55-
10-103

**Section 55-10-103  Duty to give information and render aid. -**

(a)      The driver of any vehicle involved in an accident, resulting
in injury to or death of any person or damage to any vehicle that is
driven or attended by any person shall give the driver's name,
address and the registration number of the vehicle the driver is
driving, and shall, upon request and if available, exhibit that driver's

20

operator's or chauffeur's license, or driver license, to the person struck or the driver or occupant of or person attending any vehicle collided with, and shall render to any person injured in the accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if carrying is requested by the injured person.

**Section 55-10-106   Immediate notice of accident.**
(a)      The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of fifty dollars ($50.00) or more shall immediately, by the quickest means of communication, give notice of the accident to the local police department if the accident occurs within a *municipality, otherwise to the office of the county sheriff or the* nearest office of the state highway patrol.

**Section 55-10-205  Reckless driving.**
(a)    Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving.

36.  Plaintiffs charge and allege that the two sworn police officers, Defendant

Officers Malone and Williams of the Defendant City and Defendant MPD, were in

violation of certain ordinances of Shelby County, Tennessee which were in full force and

effect at the time and place of the accident and applicable as set forth in the Shelby

County Tennessee Code of Ordinances, constituting negligence per se, as follows:

**Section 24-116.  Duty to devote full time and attention
to operating vehicle.**
It shall be unlawful for a driver of a vehicle to fail to devote full time and attention to operating such vehicle when such failure, under the then existing circumstances, endangers life, limb or property.

**Section 24-117.   Duty to drive at a safe speed, maintain
lookout, and keep vehicle under control;**
Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver shall:
(1)  Operate his vehicle at a safe speed.

21

(2)  Maintain a safe lookout;
(3)  Use due care to keep his vehicle under control.

**Section 24-136.   General speed restrictions.**
It shall be unlawful for any person to drive a vehicle upon the streets or highways of the county at a speed greater than that which is posted by the county or state.

37.  Plaintiffs charge and allege that the Defendant, Marterrion Brisco, was in violation of certain ordinances of Shelby County, Tennessee which were in full force and effect at the time and place of the accident and applicable as set forth in the Shelby County Tennessee Code of Ordinances, constituting negligence per se, as follows:

**Section 24-115.  State driver's license required; compliance with financial responsibility law required; evidence of compliance.**
(a)    For purposes of this section:
Financial responsibility means:
(1)    Documentation, such as the declaration page of an insurance policy, an insurance binder, or an insurance card from an insurance company authorized to do business in the state, stating that a policy of insurance meeting the requirements for the state financial responsibility law has been issued;
(b)    No person shall operate any motor vehicle on any street or highway without having in his possession a driver's license valid under the laws of the state for the type or class of vehicle being driven.
(e)    It is a violation of this section to fail to provide evidence of financial responsibility pursuant to this section.

**Section 24-116.  Duty to devote full time and attention to operating vehicle.**
It shall be unlawful for a driver of a vehicle to fail to devote full time and attention to operating such vehicle when such failure, under the then existing circumstances, endangers life, limb or property.

**Section 24-117.   Duty to drive at a safe speed, maintain lookout, and keep vehicle under control;**

22

Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver shall:
 (1)  Operate his vehicle at a safe speed.
 (2)  Maintain a safe lookout;
 (3)  Use due care to keep his vehicle under control.

**Section 24-136.   General speed restrictions.**
 It shall be unlawful for any person to drive a vehicle upon the streets or highways of the county at a speed greater than that which is posted by the county or state.

## VI.  PROXIMATE CAUSE

38.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 37 of this Second Amended Complaint and incorporate them herein, as if copying *in extenso*.

39.  Each and all of the foregoing common law acts and omissions of negligence, and the negligence per se by Defendant Officers Malone and Williams, two sworn police officers of Defendant City and Defendant Memphis Police Department, and the common law acts of negligence and the negligence *per se* violations by the Defendant Marterrion Brisco, singularly and/or in combination with one another, directly and proximately caused the motor vehicle collision set forth herein, and said acts, omissions, and violations are a direct, actual, and proximate cause of injuries suffered by the minor Plaintiff, LASUNDRA JOSEPHINE WHITE and deceased minor Plaintiff, JASMINE KINDS, which persist, and the damages set forth below.

## VII.  INJURIES AND DAMAGES

40.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 39 of this Second Amended Complaint and incorporate them herein, as if copying *in extenso*.

41. Plaintiff, SHONDA R. WHITE, individually and as mother and next friend
LASUNDRA JOSEPHINE WHITE, minor, charges and alleges that as a direct and
proximate result of one, some, or all of the of the aforesaid acts of common law
negligence and/or violation of the Statutes of the State of Tennessee and/or violation of
the Ordinances of Shelby County, Tennessee, on the part of the two sworn police
officers of the Defendant City and Defendant MPD, and Defendant, Marterrion Brisco,
that  minor Plaintiff LASUNDRA JOSEPHINE WHITE, suffered injuries and damages
including but not limited to:

a.   Severe and permanent personal injuries and damages, including
     but not limited to 2nd degree burns on the right side of her body,
     scarring and disfigurement, and injuries to her body as a whole,
     and trauma;

b.   Temporary/permanent impairment to the body as a whole as a
     result of multiple injuries;

c.   Enormous pain and physical suffering;

d.   Hedonic damages, including loss of enjoyment of life, both past
     and future;

e.   Fright and shock;

f.   Great mental anguish, and

g.   Out of pocket expenses;

h.   Large medical expenses, both past and future, were also incurred
     by Plaintiff, SHONDA R. WHITE, individually and as mother and
     next friend of minor Plaintiff, LASUNDRA JOSEPHINE WHITE, the
     known amount which may be supplemented, pursuant to TCA
     § 24-5-113(b).

i.   Plaintiff, LASUNDRA JOSEPHINE WHITE, was left to cope with
     emotional and mental distress, physical trauma and injuries that

24

required follow up medical care after and due to the officers' actions on May 6, 2023;

j.     Past, present, and future emotional distress, anguish, anxiety, pain, and suffering;

k.     Past, present and future medical expenses;

l.     All other relief to which Plaintiffs are entitled under Tennessee and federal law.

42.  That the assault of agents and/or employees of Defendant City and Defendant MPD, caused Plaintiff to suffer a loss of earning capacity, as well as suffer physical and mental/emotional injuries and disfigurement, and severe burns to her body as a whole.

43.  Plaintiff, SHONDA R. WHITE, individually and as mother and next friend of JASMINE KINDS, deceased minor, charges and alleges that as a direct and proximate result of one, some, or all of the of the  aforesaid acts of common law negligence and/or violation of the Statutes of the State of Tennessee and/or violation of the Ordinances  of Shelby County, Tennessee, on the part of the Defendant Officers Malone and Williams, of the Defendant City and Defendant MPD and Defendant, Marterrion Brisco, that  minor Plaintiff, JASMINE KINDS, suffered severe and fatal injuries and damages, including but not limited to:

a.     Severe fatal personal injuries and damages to her body as a whole resulting in her death,

b.     Enormous pain and physical suffering prior to her death;

c.     Hedonic damages, including loss of enjoyment of life, both past and future;

d.     Fright and shock;

e.      Great mental anguish, and

f.      Out of pocket expenses;

g.      Large medical expenses, both past and future, were also
        incurred by Plaintiff, SHONDA R. WHITE, individually and as
        mother and next friend of deceased minor Plaintiff, JASMINE
        KINDS, the known amount which may be supplemented,
        pursuant to TCA § 24-5-113(b), including medical expenses
        and funeral expenses.

44.    The acts of Defendant Officers Malone and Williams, two sworn police

officers of Defendant City and Defendant Memphis MPD, through its officers, agents

and/or employees were intentional or exhibited reckless indifference in causing injuries

to Plaintiffs.

45.    Defendant City and Defendant MPD and its officers, agents and/or

employees' actions caused injuries experienced by Plaintiffs on May 6, 2023.

That Defendant City and Defendant MPD, through its officers, agents and/or employees

were intentional or exhibited reckless indifference in causing injuries to Plaintiffs.

46.    That because of and due to the actions of agents and/or employees of

Defendant City and Defendant MPD, and actions or omissions and the above-named

Defendants, Ontarian Malone, Marquavius Williams, Marterrion Brisco and Xavier Hunt,

Plaintiff suffered compensatory damages that consists of her legal fees and work losses

and earnings capacity, as well as damages in the form of mental anguish, loss of

enjoyment of life, humiliation, disfigurement, medical expenses, and damage to her

reputation among other non-economic damages.

47.    That because of and due to the actions of agents and/or employees of

Defendant City and Defendant MPD, and actions or omissions and the above-named

Defendants, Plaintiff SHONDA R. WHITE, who is the mother and next friend of

LASUNDRA JOSEPHINE WHITE, suffered damages in the form of loss of services that

would have been provided by Plaintiff, LASUNDRA JOSEPHINE WHITE, but for the

actions/omissions of the Defendants.

48.   In addition, Officers Malone and Williams two sworn police officers of

Defendant City and Defendant MPD are liable for compensatory and exemplary damages

arising from their negligence and gross negligence, and Defendant City and Defendant

MPD are also liable additionally for punitive damages to Plaintiffs.

## VIII.  CIVIL RIGHTS CLAIM

49.    Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 48 of

this Second Amended Complaint and incorporate them herein, as if copying

*in extenso*.

50.   The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as

follow:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

27

51.  Plaintiffs allege that Defendants, jointly and/or severally, deprived Plaintiffs of their Fourth Amendment right, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Plaintiffs' rights in the following ways:

A.  By unlawfully pursuing Plaintiffs in violation of the Fourth Amendment and its reasonableness standard to be free from unreasonable, unlawful pursuit, when no probable cause existed to make a pursuit;

B.  By using excessive force and cruel and unusual punishment when pursuing Plaintiffs, specifically through force;

C.  By Defendants City and MPD failing to provide its officers with supervision and/or proper training to prevent such incidents of excessive force and unlawful pursuit, specifically all Defendant officers named herein.

D.  By Defendants City and MPD failing to provide proper training on the constitutional limits on the use of force against citizen-detainees, specifically Defendants Ontarian Malone and Marquavius Williams, of the MPD and by ratification and condoning the actions or omissions of these officers by failing to intervene, failing to provide appropriate medical care to Plaintiffs when they were clearly in need of evaluation, treatment and stabilization.

E.  By Defendants City and MPD failing to provide proper training of the dangers associated with unlawful pursuit of persons, causing unnecessary, unreasonable and permanent injury.

F.  Defendants City and MPD failing to train or

28

supervise its officers on the obligation to
summon medical   care for citizen-detainees
experiencing medical conditions, despite
medical care being a very short distance away
from the above-described encounter with
Plaintiffs and despite being fully aware that
Plaintiffs were exhibiting clear signs of injury
after such force was used.

52.  Defendants' violations of Plaintiffs' constitutional rights resulted in their

suffering and were a direct cause of their injuries.

**A.  CLAIM ONE:  42 U.S.C. § 1983 – PEACE/OFFICER DEPUTY
LIABILITY**

53.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 52 of this

Second Amended Complaint and incorporate them herein, as if copying *in extenso*.

54.  Plaintiffs bring this claim against Defendant Officers Malone and Williams

individually as well as their official capacity, pursuant to U.S.C. § 1983 and for

punitive damages.

55.  At all material times, Defendant Officers Malone and Williams, two sworn

police officers of Defendant City and Defendant MPD were acting under color of

state law as agents and employees of Defendant City and Defendant MPD. Both

Defendant Officers Malone and Williams were always acting within the course and

scope of their duties as officers of the Defendant City and Defendant MPD relevant

during this cause of action.

56.     Plaintiffs demonstrated how Defendant Officers Malone and Williams

2 sworn police officers of Defendant City and Defendant MPD violated their federal

constitutional rights and civil liberties guaranteed by the Fourth and Fourteenth

Amendments by unlawfully pursuing them.

57.    Defendant Officers Malone and Williams unlawfully acted under the color of state law to deprive Plaintiffs of their Fourth Amendment right to be free from unlawful pursuit without a warrant, without reasonable suspicion of a criminal act, and without probable cause to believe a crime had occurred or was about to occur and by exerting or allowing excessive force against them as well as failing to render aid to Plaintiffs.

58.    Defendant Officers Malone and Williams used and abused their badge and authority bestowed by Defendant City and Defendant MPD to interfere with Plaintiffs' liberty without reasonable and just cause in violation of the Fourth Amendment and violated Plaintiffs' constitutional rights as protected by the Fourth, Fifth, Eighth and Fourteenth Amendments.

59.    Defendant Officers Malone and Williams, 2 sworn officers of Defendant City and Defendant MPD, lacked probable cause to pursue Plaintiffs based on the surrounding circumstances of their actions.

60.    At the time of the incident, there were no outstanding warrants for Plaintiffs.

61.    Plaintiffs did not make any verbal or gesture that would subjectively or objectively give Defendant Officers Malone and Williams reason to believe Plaintiffs needed to be arrested.

62.    As a direct and proximate cause of this unlawful pursuit Plaintiffs suffered federal civil liberty violations, public humiliation, physical injury, medical expenses,

lost wages, and mental and emotional distress.

## Excessive Force

63.    Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 62 of
this Second Amended Complaint and refences the same herein reference *in
extenso*.

64.    Plaintiff brings this claim against Defendant Officers Malone and
Williams, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983
and for punitive damages.

65.    At all material times, Defendant Officers Malone and Williams were acting
under color of state law as an agent and employee of Defendant City and Defendant
MPD. Defendant Officers Malone and Williams wore their official Defendant MPD
uniform and were acting within the course and scope of their duties as City of
Memphis officers at all times relevant to this cause of action.

66.    Plaintiffs assert Defendant Officers Malone and Williams violated their
federal constitutional guarantees of the Fourth Amendment, incorporated to the
states by the Fourteenth Amendment, to be free from excessive force.

67.    Force is excessive, and therefore violates the Fourth Amendment, if it
is not reasonable considering the circumstances facing the officer.  *See Graham v.
Connor*, 490 U.S. 386, 398  (1989).  The facts and circumstances of this case show
that Defendant Officers Malone and Williams' act of pursuing Plaintiffs was excessive
and unreasonable under these circumstances and their failure to intervene and/or
attend to their injuries and provide necessary medical care was equally troubling and

unlawful.

68.     Plaintiffs did not commit a criminal act in Defendant Officers Malone
and Williams' presence therefore no facts or circumstances existed to support or
warrant an unlawful pursuit of them.

69.     Plaintiffs never made a violent movement towards Defendant Officers
Malone and Williams, or any other person involved that could be objectively or
subjectively interpreted as an immediate threat to the safety of the officers or others.

70.     Defendant Officers Malone and Williams' actions were unreasonable and
unwarranted under the circumstances when comparing or balancing the amount of force
used against the need for the force under the current circumstances.

71.     Therefore, by using subjectively and objectively unreasonable force while
acting under color of state law, Defendant Officers Malone and Williams violated Plaintiffs'
rights under the Fourth and Fourteenth Amendments to the United States Constitution.

72.     As a direct and proximate cause of Defendant Officers Malone and
Williams' excessive force and any other Defendant's failure to intervene and/or
supervise, Plaintiffs suffered federal civil liberty violations, public humiliation, permanent
physical injury, medical expenses, lost wages and earning capacity, mental and
emotional distress as well as disfigurement.

### B.  CLAIM TWO:  42 U.S.C. § 1983 – MUNICIPAL LIABILITY

73.     Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 72 of
this Second Amended Complaint, and references the same herein, as if copying
*in extenso*.

74.    Plaintiffs bring this claim against Defendant City.

75.    Plaintiffs assert that their constitutional rights were violated when Defendant Officers Malone and Williams unlawfully pursued Plaintiffs, using excessive force in pursuing Plaintiffs at a very high rate of speed, exceeding the posted speed limit, violating their constitutional rights.

76.    Plaintiffs assert that their constitutional rights were violated when Defendant Officers Malone and Williams, one or both of them, failed to intervene or provide, render, or solicit necessary medical treatment after the vehicle accident as described herein.

77.    Defendant City is also liable under 42 U.S.C. § 1983 for failing to supervise and train its officers insofar as it failed to provide training and supervision for a known and foreseeable occurrence of initiating and engaging in high-speed vehicle pursuits. In addition, the Defendant City's willful blindness, including but not limited to by supervisory employees, towards the constitutional violations of its employees, constitutes gross negligence and/or deliberate and conscious indifference to citizens' rights, including the right to be free from constitutional violations under 42 U.S.C. § 1983 and 1988.

78.  Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the Defendant City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents  official  policy. *See  Bd.*

*of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397,404 (1997).

79.  Defendant City's formal and informal actions reflect a policy, practice,

custom and procedure authorizing and allowing constitutional rights violations.

80.  Consequently, Defendant City is liable for harm caused to Plaintiffs

because of its formal and/or informal policies, practices customs and procedures.

81.  Defendant City is liable for the constitutional torts of officers Malone and

Williams because the MPD sanctioned the following customs, practices, and policies:

> (A)  Using unreasonable and excessive force to carry out detentions and/or arrests;
>
> (B)  Arbitrarily using arrests when they are not necessary or permitted by law;
>
> (C)  Ignoring the serious need for training and supervision of its officers, specifically officers who have exhibited a pattern and practice of violation rules and regulations regarding policies and procedures for initiating and conducting high speed vehicular pursuit that greatly exceeds the posted speed limit.
>
> (D)  Ignoring the pattern and practices of Defendants, Williams and Malone, who have repeatedly in high-speed vehicular pursuits and speed that greatly exceed the posted speed limit, with no vehicle lights on, no visual or audible emergency signals or a combination of emergency devices during a time of darkness, when the individuals being pursued have not committed a crime;
>
> (E)  Failing to adequately supervise and/or observe its officers;
>
> (F)  Failing to adequately train officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause;

(G)    Failing to discharge officers, specifically officers who have shown a pattern or practice of misbehavior.

(H)    Failing to discharge officers who have shown a pattern or practice of using excessive force;

(I)    Failing to adequately screen officers, specifically officers, who have shown a pattern or practice of using excessive force before hiring said officers;

(J)    In all such ways as pled in paragraphs 40 7 (A)-(F) above.

(K)    Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

82.  Plaintiffs respectfully show that Defendant City and Defendant MPD failed to train or properly supervise Defendant Officers Malone and Williams through the following acts and/or omissions:

*A.* Failure to take any corrective action regarding "black out pursuits" performed by Officer Willaims prior to May 6, 2023;

*B.* Failure to ensure Defendant Officer Williams would continually maintain control of police units during emergency and non-emergency modes, following two accident resulting in significant property damage when Defendant Officer Williams failed to maintain control.

*C.* Failure to ensure Defendant Officer Williams would not knowingly violate written policies and procedures.

*D.* Failure to take any corrective action following two high-speed pursuits engaged by Defendant Officer Malone wherein policies concerning the activation of emergency lights, supervisory authority, and radio protocol were violated, both of which occurred within the six months

35

preceding the events of May 6, 2023.

83.  The failures set forth above constituted a deliberate indifference by Defendant City and Defendant MPD, in that Officers known to engage in "black out" high speed pursuits, without notifying proper supervisory authority, without the use of emergency lights, ICV, BWC, failing to maintain control of police units, all in violation of the policies and procedures of Defendant MPD, to not only continue on patrol but to patrol together in the same marked police unit.

84.  Plaintiffs respectfully show that the deliberate indifference is a cause in fact and a proximate cause of the injuries sustained herein, because the automobile accident set forth above occurred in whole or in part because of a high-speed "blacked out" pursuit that was engaged without emergency lights, without supervisory authority, all in violation of the policies and procedures of Defendant MPD.

85.  At the time Defendant Officers Malone and Williams pursued Plaintiffs, they were acting pursuant to Defendant City's policy, practice, custom and procedure of overlooking, ratifying and/or authorizing the officers' excessive use of force and failures to intervene and/or render aid. *See Monell v. New York County Dept. of Social Servs.*, 436 U.S. 658, 659 (1978).  Defendants Officers Malone and Williams, ratified, condoned or acquiesced to the actions and omissions by Defendant Officers Malone and Williams.

86.  Thus, Defendant City's failure to supervise and train its officers, and its

36

willful blindness towards the constitutional violations of its employees was a direct
cause of Plaintiffs' injuries.

## Failure to Train a Single Police Deputy

87.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 86 of this
Second Amended Complaint and reference the same herein, as if copying
*in extenso*.

88.  A City may be held liable for its failure to train a single officer when the
policymakers know about the pattern of unconstitutional misconduct and the officers'
acts were so egregious that the Defendant City should have had clear warning that the
specific officers posed a danger to citizens. *See Pineda v. County of Houston*, 124 F.
Supp. 2d 1057, 1068 (S.D. Tex. 2000).

89.  With respect to Defendant Officers Malone and Williams, the need for
additional or different training was necessary and obvious considering the
circumstances of this incident. Defendant City knew that Defendant Officers Malone
and Williams were likely to engage in other acts of wrongful conduct or grossly
negligent or reckless conduct without proper responses to and engagement with
individuals like Plaintiffs, yet Defendant City continuously failed to properly discipline,
supervise, or train officers, specifically Defendant Officers Malone and Williams.

90.  Defendant City's acts and omissions, when viewed objectively, involved
an extreme degree of risk considering the probability and magnitude of harm to
citizens. Defendant City had actual, subjective awareness of the risks involved
insofar as it was aware of the need for said training and in fact had access to and

resources for said training, but nevertheless preceded with conscious indifference to
the rights, safety, or welfare of others, including Plaintiffs

91.  Thus, considering the substantial risks posed by Defendant Officers
Malone and Williams, Defendant City failure to train one or all of them constitutes
gross negligence and/or deliberate and conscious indifference to the rights, safety,
and welfare of others, including Plaintiff.

**CLAIM III:   TENNESSEE GOVERNMENTAL TORT LIABILITY**

92.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 91 of this
Second Amended Complaint and references the same herein, as if copying
*in extenso*.

93.  As a municipality operating under the laws of the State of Tennessee under
Tenn Code. Ann. § 29-20-101, Defendant City is liable for actions or omissions of its
employees towards citizens committed or occurring while in the course and scope of
their employment.

94.  Defendant City and Defendant MPD and their employees, specifically but
not limited to the law enforcement officers named herein, Defendant Officers,
Malone and Williams, committed serious infractions which they had a duty to use
reasonable care in ensuring would not occur.

95.  Said actions described herein above, alternatively and/or additionally amount
to negligence which but for said negligence, Plaintiffs would have not suffered the
injuries described herein.

96.  Said actions amounted to negligence from which Plaintiffs suffered

damages and injuries.

## IX.  ATTORNEY'S FEES

97.  Plaintiffs re-allege, re-assert, and re-aver paragraphs 1 through 96 of this Second Amended Complaint and reference the same herein, as if copying *in extenso*.

98.  Plaintiffs are entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. 42 U.S.C. § 1988. Plaintiffs hereby request that the Court and jury award their attorney's fees and expenses.

## X. JURY DEMAND

99.  Plaintiffs respectfully demand a bench trial to hear the claims under the Governmental Tort Liability Act.  Plaintiffs further respectfully demand a jury trial to resolve all remaining claims set forth in this cause of action.

## X.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS RESPECTFULLY PRAY AS FOLLOWS:**

1.  Defendants be cited to appear and answer this Second Amended Complaint;

2.  That Plaintiffs have judgment against Defendants, jointly and/or severally, for actual damages above the jurisdictional minimum of the Court; exemplary damages; pre-judgment interest; post-judgment interest, court costs, attorney's fees and expenses;

39

3.   That after all delays and due proceedings had, there be a judgment against the Defendant jointly, severally and *in solido*, for actual damages, exemplary damages, pre-judgment interest, post judgment interest, court costs, attorney fees and all expenses.

4.   All other relief to which Plaintiffs are justly entitled under the laws of the State of Tennessee, the United States of America, and equity.

5.   Plaintiff, SHONDA R. WHITE, individually and as mother and next friend of LASUNDRA JOSEPHINE WHITE, sues the Defendants and prays for a judgment for compensatory damages in an amount not to exceed Ten Million and No/100 Dollars ($10,000,000.00);

6.   Plaintiff, SHONDA R. WHITE, individually and as mother and next friend of deceased minor, JASMINE KINDS, sues the Defendants and prays for a judgment for compensatory damages in an amount not to exceed Ten Million and No/100 Dollars ($10,000,000.00);

7.   Plaintiffs also pray for a trial by jury and the right to amend their Complaint to conform to the evidence as it develops, costs, post-judgment interest, and for any and all further legal and equitable relief that this Honorable Court deems proper.

Respectfully submitted,

MILLER LAW FIRM

*/s/ Henry W. Miller, III*
Henry W. Miller, III    (#016817)
Michael W. Miller    (#11612)
Henry W. Miller, IV  (#036533)
*Attorneys for Plaintiffs*
2400 Poplar Avenue, Suite 418
Memphis, TN 38112
901-327-3434    (Office)
mlfhenry@bellsouth.net
mlfmichael@bellsouth.net
mlfhenryjr@gmail.com

## CERTIFICATE

I do hereby certify that I have served a copy of the foregoing pleading by mailing and/or emailing a copy of same to counsel and/or parties whose names and addresses appear below, having done same this ____15th____ day of ____September____, 2025:

Tanner G. Gibson – Chief Legal Officer/City Attorney
Frank B. Thacher, III (#23925) – Senior Assistant City Attorney
125 N. Main St., Room 336
Memphis, TN 38103
(901) 636-7408
Frank.Thacher@memphistn.gov
*Attorney for City of Memphis*

Ontarian Malone
4928 Woodberry Cove
Memphis, TN 38141

41

Marquavirus Williams
6375 Arbor Creek Trail, #102
Memphis, TN 38115

Marterrion Brisco
3196 Southbridge Street
Memphis, TN 38118

Xavier Hunt
4455 Laird Drive
Memphis, TN 38141

Matthew W. Pryor (LA Bar #23,903) Application pending for TN
James S. Sullivan #036332
2000 Meridian Boulevard, Suite 225
Franklin, TN 37067
(615) 514-6710
mpryor@asilpc.com
jsullivan@asilpc.com
*Attorneys for Symara A.C. Young*

*/s/ Henry W. Miller, III*
Henry W. Miller, III    (#016817)
Michael W. Miller  #11612
Henry W. Miller, IV   #036533