IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| Symara A.C. Young,<br><br>   Plaintiff,<br><br>   v.<br><br>City of Memphis *et al.*,<br><br>   Defendants. | **Case No. 2:25-cv-02799-SHL-TMP** |
| Shonda R. White,<br><br>   Plaintiff,<br><br>   v.<br><br>City of Memphis *et al.*,<br><br>   Defendants. | **Case No. 2:25-cv-02800-SHL-TMP** |

**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff SHONDA WHITE, through her undersigned counsel, moves this Court for leave to amend her operative complaint in this case, *White* ECF 9. Pursuant to Local Rule 15.1(a), Plaintiff appends to this motion a signed copy of the proposed amended complaint as **Exhibit 1**.

Plaintiff has consulted with defendant City of Memphis. The counsel for the City informs Plaintiff that the City opposes this request to amend.

In support of her motion Plaintiff states as follows:

1

**BACKGROUND**

This case arises from a fatal police chase in Memphis. In the early hours of May 6, 2023, two Memphis Police Department officers, Ontarian Malone and Marquavius Williams, were driving together in an MPD patrol car when they saw a 2013 Infiniti G37 at a gas station. There were seven people crowded into the car, including teenage sisters Lasundra White and Jasmine Kinds.

When the Infiniti began to pull away from the gas station, the officers, who were riding together, decided to follow it. Their reason? They would explain later that the car "kind of looked suspicious" and that they "thought the car was probably stolen since you know [Infiniti model cars] are a common car to be stolen."

When Malone and Williams began following the Infiniti, they did not turn on their police lights or sirens, or even their headlights. This was a practice Williams called being "blacked out," which he explained he had done on occasion to "get up on the vehicle."

The car was not stolen. It was being driven by a young man named Marterrion Brisco. Upon being pursued by the blacked-out car behind him, Brisco sped up. That might have been the time for Malone and Williams to turn on their police lights and pull the Infiniti over. But they did not do that. Instead, Malone and Williams chose to conduct a blacked-out, high-speed chase of the Infiniti through the streets of Memphis, never turning on their police lights, never turning on their sirens, and never radioing that they were pursuing a vehicle.

Eventually, while the high-speed chase was ongoing, Malone and Willims hit the back of the Infiniti with their police car. The Infiniti lost control, side-swiped an oncoming car, and then careened into a building. There, it burst into flames.

Brisco and some of the people in the Infiniti managed to get out quickly. Others were not so lucky. The collision caused one girl to fly through the car's sun roof. She suffered serious injuries. Lasundra was able to escape from the back of the car, but not before suffering severe burns. Jasmine, who was 17, burned to death in the Infiniti's back seat. The tragedy did not end there: Jasmine herself had a young child, P.K.K., who will never know his mother.

It is difficult to imagine more catastrophic injuries. But in seeking a just recovery, Lasundra and Jasmine's family faces formidable barriers. That is not because the pursuit that led to this event was a legitimate one. To the contrary, Malone and Williams have both been criminally indicted for their conduct in this chase. Nor is it because the officers were acting outside their scope of employment with the MPD. They were not. Rather, it is because as a practical reality, the avenues available for meaningful compensation are narrow. The family could, and has, asserted claims against Malone and Williams pursuant to 42. U.S.C. § 1983, but the officers themselves likely have limited assets, and they are not indemnified. The family has also sued the City under Tennessee tort law, but the Tennessee Governmental Tort Liability Act contains various limiting provisions, including a cap on recovery.

That leaves a Section 1983 claim against the City itself, brought under the Supreme Court's *Monell* doctrine. *That* route portends considerable difficulty, starting at the pleading stage. *Monell* and its progeny foreclose conventional species of corporate liability, such as *respondeat superior*, familiar in tort law. What might be dead-bang allegations in a tort case, such as the repeated prior, similar misconduct by Malone and Williams before they chased down and rammed the Infiniti, offers limited promise under the considerable liability barriers that *Monell* has created. *Monell* does make several potential theories of liability available, but ultimately "a [*Monell*] plaintiff must identify the policy, connect the policy to the city itself and

show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

In so construing Section 1983 municipal liability, *Monell* "has produced a highly complex body of interpretive law" for pleading and establishing corporate Section 1983 liability, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 430 (1997) (Breyer, J. dissenting). That complex body of law, and the considerable barriers of proof, have rendered much of Section 1983 municipal liability litigation a specialized field, with specialized litigators.

Plaintiff has been represented thus far by the Miller Law Firm, a longstanding and well-regarded family law firm in Memphis practicing in a variety of areas, including criminal defense, family law, probate, estate planning, bankruptcy, and personal injury. Working with the Miller firm, and confronted by *Monell* and the complex body of case law interpreting it, Plaintiff has elected to bring on attorneys who specialize in Section 1983 municipal litigation. Those undersigned attorneys, from Romanucci & Blandin LLC, specialize in *Monell* litigation and have a nationwide focused on *Monell* claims. In the proposed amended complaint, counsel from the Romanucci firm have re-drafted Plaintiff's claims, focusing on alleging facts supporting Plaintiff's *Monell* theories, with the aim of addressing the deficiencies that Memphis has purported to identify in its motion to dismiss, ECF 19. Plaintiff also seeks to add her grandchild, P.K.K., to the complaint.

## LEGAL STANDARD AND DISCUSSION

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has explained, this mandate means that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad
> faith or dilatory motive on the part of the movant, repeated failure to cure

>deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.— the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting earlier version of Rule 15(a)). Plaintiff respectfully submits that none of the reasons that might counsel against amendment are present in this case, and that Rule 15's presumption in favor of liberal amendment should be observed.

***Bad faith, undue delay and undue prejudice***. These criteria are designed to "protect[] defendants from undue prejudice or unfair tactics, such as waiting (without justification) to amend a complaint until after the parties have completed discovery . . . ." *In re AME Church Emp. Ret. Fund Litig.*, No. 1:22-MD-03035, 2024 WL 4668163, at *3 (W.D. Tenn. Nov. 4, 2024). Those considerations are not at issue here. Plaintiff's reason for amending this complaint is straightforward: she seeks to address the purported deficiencies that the City has identified with her *Monell* claims (and to add P.K.K.). She is doing so with the benefit of specialized counsel who are experienced in litigating *Monell* actions. Plaintiff is also doing so promptly, at the very outset of this case. Bad faith, undue delay, and undue prejudice are not at issue.

***Multiple amendments***. This criteria "permits the court to manage its docket in a fair and efficient manner." *Id.* Plaintiff, of course, proposes here to file a third amended complaint to address purported deficiencies. But Plaintiff is taking this step proactively, amending her complaint before the Court expends resources adjudicating the sufficiency of her current pleading. The current amendment, moreover, does not consist of marginal or immaterial edits. Plaintiff has brought on an entirely new legal team, specializing in the subject matter, to revamp the complaint and plead robust *Monell* allegations that will state a viable Section 1983 claim against the City. The proposed amended complaint shows that Plaintiff is taking the parties' resources and the Court's time seriously. This factor does not counsel against amendment.

***Futility***.  This criteria also counsels in favor of amendment.  "At this [Rule 15 motion] stage of the litigation, this Court is charged with determining whether the futility of an amendment is so obvious that it should be disallowed." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-CV-557, 2018 WL 4090199, at *3 (S.D. Ohio Aug. 28, 2018) (quotation omitted).  This is a "low bar," *id.*, and where a defendant's opposition to amendment would "require the Court to address directly the merits" of the claims to be amended, courts often conclude that "it's the better exercise of discretion to permit the amendment, after which [the defendants] may raise their merits arguments through a dispositive motion. *Id.* (quotation omitted).  At that point, the matter is "subject to proper consideration by the District Judge." *Id.* (quotation omitted).

Plaintiff submits that is the proper course here.  Nevertheless, a few comments on the merits of her allegations are appropriate.  The proposed amended complaint cites among its allegations information contained in a pattern and practice report regarding the Memphis Police Department that was promulgated by the U.S. Department of Justice in December 2024.  *See* Ex. 1 ¶¶ 61-63.  After the Trump administration came into office it withdrew the Memphis report (along with similar reports across the country).  In opposing the motion to amend in the consolidated case, the City argues that the report's withdrawal means that it cannot be cited.  *See Young v. City of Memphis*, Case No. 2:25-cc-02799, ECF 42 at 6-7.  That is simply not so.  Courts have made clear that a complaint, investigation, or related finding, even if later withdrawn, are a relevant and appropriate subject for the facts asserted therein—particularly in *Monell* pattern and practice cases like this one.  As the Court put it in *Austin v. Redford Township Police Department*, No. 2:08-CV-13236, 2011 WL 13324125, *14 (E.D. Mich. Mar. 18, 2011), in the context of civilian complaints of misconduct that are withdrawn, "[p]rior . . . complaints . . .

6

of excessive force . . . are clearly discoverable in § 1983 actions . . . . Whether the incident resulted in a conviction, a dismissal, a settlement or a lawsuit *does not negate the existence of the occurrence itself*." (quotation omitted; emphasis added). It is for this reason that "Courts [in *Monell* cases] have found misconduct complaints relevant where related investigations resulted in other findings including 'exonerated' and 'unfounded,' or where the complaints have been withdrawn, abandoned or conciliated." *Walls v. City of New York*, 502 F. Supp. 3d 686, 693 (E.D.N.Y. 2020). The Trump Administration's withdrawal of the DOJ pattern and practice report regarding the MPD does not make the incidents described therein irrelevant for citation in a complaint.

The proposed amended complaint also makes allegations about a general culture within the MPD of using excessive force—and more specifically, force intended to punish—civilians who try to flee from or otherwise annoy the police. The City has argued that similar allegations in the *Young* plaintiff's complaint are irrelevant, because this case involves a car chase. *See Young* ECF 42 at 6-7. The City's argument misunderstands *Monell*'s widespread-pattern jurisprudence. While a *Monell* plaintiff may need to "show prior instances of similar misconduct," *Williams v. Kenton Cnty.*, No. CV 2:21-cv-080, 2024 WL 4823215, at *3 (E.D. Ky. Nov. 18, 2024) (quotation omitted), "the 'alleged pattern of similar unconstitutional conduct . . . need not be identical, or even almost identical' to what [the plaintiff] alleges occurred" in their case. *Id.* (quoting *Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 472–73 (6th Cir. 2024)). The gravamen of the "run tax" allegation is that MPD officers had a culture of using unnecessary violence against civilians who attempted to flee from them. It is simply immaterial whether the

tool used to mete out that violence was a fist, a gun, or the grille of a police car.[1] The proposed amended complaint is not futile.

## CONCLUSION

The misconduct of two Memphis police officers caused extraordinary harm to the family of two teenage girls. To achieve recompense for that harm, Plaintiff proposes to amend her allegations to make robust claims against the City of Memphis under Section 1983. The allegations in her proposed complaint suggest that the misconduct of officers Malone and Williams was the product of a culture of violence within the MPD, to which the City's policymakers have been indifferent. Plaintiff respectfully submits that she should be allowed to plead those allegations before the Court and be given the opportunity to gather and submit evidence proving the truth of her charges.

Dated: December 10, 2025

Henry W. Miller, III (#016817)
Michael W. Miller (#11612)
Henry W. Miller, IV (#036533)
2400 Poplar Avenue, Suite 418
Memphis, TN 38112
901-327-3434 (Office)
mlfhenry@bellsouth.net
mlfmichael@bellsouth.net
mlfhenryjr@gmail.com

Respectfully submitted,

/s/ *Stephen H. Weil*

Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Ste. 900
Chicago, IL 60654
P: (312) 458-1000
jlevin@rblaw.net
sweil@rblaw.net

***Attorneys for Plaintiff***

* Admitted *pro hac vice*

---

[1] Plaintiff's proposed amended complaint, in all events, does include allegations about MPD officers' vehicular misconduct. *See, e.g.*, Ex. 1 ¶¶ 44-52.

# CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.2, Plaintiff certifies that she conferred with the City Memphis regarding the matters raised in this motion via email on December 8, 2025. The City's position, transmitted by its counsel via email on December 8, 2025, was that it opposes Plaintiff's motion.

*/s/ Stephen H. Weil*

Stephen H. Weil

***Counsel for Plaintiff***
